# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                   No. CR 10-2460 JB

DERRICK JONES YAZZIE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the before the Court on the Defendant's Sentencing Memorandum and Objection, filed October 21, 2011 (Doc. 48)("Sentencing Memorandum"). The Court held a sentencing hearing on October 27, 2011. The primary issues are: (i) whether the Court should sustain the objection to the proposed condition of supervised release regarding Defendant Derrick Jones Yazzie not having contact with one of the victims, Herman Tom; and (ii) whether the Court should sentence Yazzie to a sentence at the low end of the advisory guideline range. Because the parties and the United States Probation Office ("USPO") have agreed to modification of the term of supervised release to which Yazzie has objected, the Court will modify the term of supervised release and allow Yazzie to have contact with Tom if Tom and the USPO agree to Yazzie having contact with Tom. Because the Court finds that the circumstances of the case warrant a sentence at the low end of the advisory guideline range, the Court will sentence Yazzie to a sentence of 27-months imprisonment.

## PROCEDURAL BACKGROUND

On November 11, 2010, Yazzie entered a guilty plea before the Honorable Robert H. Scott,

United States Magistrate Judge, to the Indictment, filed August 25, 2010 (Doc. 12), charging him with a violation of 18 U.S.C. §§ 1153 and 81, that being arson.  See Plea Minute Sheet, filed November 11, 2010 (Doc. 22).  The USPO disclosed a Presentence Investigation Report ("PSR") for Yazzie on January 27, 2011.  In the PSR, the USPO calculates Yazzie's total offense level to be 21.  See PSR ¶ 43, at 8.  In paragraph 36 of the PSR, the USPO calculates, pursuant to U.S.S.G. § 2K1.4(a)(1)(B), a base offense level of 24, because "the offense involved the destruction of a dwelling."  PSR ¶ 36, at 8.  The PSR states that Yazzie attempted to burn down Tom's residence. See PSR ¶¶ 6-7, at 2.  The PSR then reduces this offense level to 21 because of Yazzie's acceptance of responsibility for the offense of conviction pursuant to U.S.S.G. § 3E1.1.  See PSR ¶¶ 42-43, at 8.  The PSR lists his criminal history category as II, based on 3 criminal history points.  See PSR ¶ 48, at 11.  The PSR calculates his advisory guideline range at 41 to 51 months.  See PSR ¶ 90, at 21.  Attachment A to the PSR provides a list of proposed conditions of supervised release.  One of the proposed conditions is as follows: "The defendant will have no contact with the victim at anytime."  Attachment A at 3.

Yazzie objected to the PSR's application of a base offense level of 24 under U.S.S.G § 2K1.4(a)(1)(B) as opposed to a base offense level of 20 under U.S.S.G. § 2K1.4(a)(2)(A). See Objections to the Presentence Report and, in the Alternative a Request for a Downward Departure and Variance at 2-5, filed April 26, 2011 (Doc. 32)("Objections").  The Court sustained his objections and reduced his base offense level to 20.  See Memorandum Opinion and Order at 1, filed October 17, 2011 (Doc. 46)("MOO").  Yazzie alternatively requested, if the Court did not sustain his objection to the PSR, a 4-level "downward departure and variance" to a total offense level of 17, and the imposition of a sentence of 27 months.  See Objections at 1.  There being no material disputes about the PSR's factual findings and guideline calculation following the Court's

resolution of this objection, the Court adopts the PSR's factual findings and guideline calculation --

with the exception of any matters to which Yazzie raised objections -- as its own.  The Court

incorporates by reference its earlier MOO.  An offense level of 17 and a criminal history category

of II yields a guideline imprisonment range of 27 to 33 months.

Yazzie filed his Sentencing Memorandum on October 21, 2011.  In his Sentencing

Memorandum, he "withdraws his prior request for a downward departure and variance." Sentencing

Memorandum at 1.  He argues that "[a] guideline sentence of 27 months would" be appropriate to

reflect the factors in 18 U.S.C. § 3553(a).  Sentencing Memorandum at 2.  While he notes that an

offense level "of 17 would be greater than an individual would get for committing aggravated

assault that resulted in serious bodily injury or for an involuntary manslaughter conviction that

involved reckless conduct," Sentencing Memorandum at 2, he nevertheless agrees that a sentence

of 27-months imprisonment accurately represents the circumstances of his offense, particularly

given that no one was injured during the commission of his offense, see Sentencing Memorandum

at 2-3.  He asks the Court to consider that this conviction is his first felony conviction.  See

Sentencing Memorandum at 3.  He emphasizes that his alcoholism has contributed to all his prior

offenses as well as his current offense.  See Sentencing Memorandum at 3.  He asserts that he is

willing to address his alcohol problem and be part of a program that will address his alcohol abuse

following his release from prison.  See Sentencing Memorandum at 3.  He notes that he graduated

in the top fifth of his class when he went to school in Farmington, New Mexico, and also that "[h]e

joined the Navy and passed the extensive and intensive training for elite service in the Submarine

Corp."  Sentencing Memorandum at 3.  He also objects to the proposed condition of supervised

release "that he ha[ve] absolutely no contact with Herman Tom."  Sentencing Memorandum at 4.

He contends that, as the Court previously recognized in its MOO, he "and his uncle had a good

relationship before the events of this case." Sentencing Memorandum at 4. He states that he believes, "consistent with the Native American tradition of Peacemaking, that the conflicts in the family are resolved and there is not a concern of ongoing animosity between [himself] and Mr. Tom." Sentencing Memorandum at 4. Consequently, he requests "that the condition be modified to allow contact with Mr. Tom . . . with permission of Mr. Tom and the United States Probation Office." Sentencing Memorandum at 4. Plaintiff United States of America did not file a written response to the Sentencing Memorandum.

At the sentencing hearing on October 27, 2011, the probation officer present at the hearing indicated that the USPO did not oppose modification of the proposed condition of supervised release regarding contact with Tom to the terms Yazzie has requested. See Transcript of Hearing at 2:18-3:3 (taken October 27, 2011)(Court, Probation Officer)("Tr.").[1] Yazzie and the United States both asserted that they agreed to the modification of the proposed condition of supervised release. See Tr. at 3:12-24 (Butcher, Court, Long). Yazzie recognized that he caused significant harm as a result of his conduct, but emphasized that a sentence at the low end of the advisory guideline range is appropriate under the circumstances. See Tr. at 4:6-16 (Butcher). Yazzie stated that he recognizes his alcohol problem and plans to seek treatment to resolve it. See Tr. at 4:17-5:2 (Butcher). He emphasized that this conviction is his first felony conviction. See Tr. at 5:14-15 (Butcher). He asserted that, while he has been in custody since August 11, 2010, he has managed to remain sober from alcohol and that doing so has helped him in a variety of ways, including improving his relationship with his family. See Tr. at 5:22-6:8 (Butcher). The United States argued that Yazzie acted in a dishonest manner when law enforcement officials interviewed him about the

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

incident.  See Tr. at 9:14-24 (Long).  The United States requested that the Court impose a sentence of 33-months imprisonment, the high end of the advisory guideline range.  See Tr. at 9:25-10:10 (Long).

## ANALYSIS

Because the parties' and the USPO have agreed to modification of the term of supervised release regarding Yazzie's contact with Tom, the Court will modify that term in a manner consistent with Yazzie's proposed term.  The Court believes that Yazzie's case contains sufficient mitigating circumstances and a lack of aggravating circumstances to justify a sentence at the bottom of the advisory guideline range.  The Court will sentence Yazzie to 27-months imprisonment.

**I.    THE COURT WILL MODIFY THE TERM OF SUPERVISED RELEASE REGARDING YAZZIE'S CONTACT WITH TOM IN ACCORDANCE WITH HIS PROPOSED MODIFICATION.**

Yazzie objects to the proposed condition of supervised release "that he ha[ve] absolutely no contact with Herman Tom."  Sentencing Memorandum at 4.  Consequently, he requests "that the condition be modified to allow contact with Mr. Tom . . . with permission of Mr. Tom and the United States Probation Office."  Sentencing Memorandum at 4.  At the sentencing hearing, both the USPO and the United States agreed that this modification would be suitable.  Consequently, the Court will sustain the objection and modify the proposed condition so that Yazzie will be allowed contact with Tom with the permission of Tom and the USPO.

Yazzie has not argued that the modified condition he has set forth restricts his substantive-due-process right to contact with family members.  While the Court is tempted to avoid addressing whether the modified condition is legal under the doctrine of constitutional avoidance, which counsels that courts should not address constitutional issues that none of the parties have raised and that need not be decided, see Burton v. United States, 196 U.S. 283, 295 (1905)("It is not the habit

-5-

of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision

of the case."), the Court has an obligation to avoid error, even if the error might be later reviewed

under deferential plain-error review.  By requesting this modified condition himself and agreeing

to it at the sentencing hearing, Yazzie has invited any error.  See United States v. Teague, 443 F.3d

1310, 1316-17 (10th Cir. 2006)(applying the invited-error standard rather than the plain-error

standard to a "restriction on contact" with the court except through an attorney imposed as part of

supervised release that the defendant "suggested"); United States v. Edward, 224 F.3d 1216, 1222

(10th Cir. 2000)("The invited error doctrine prevents a party from inducing action by a court and

later seeking reversal on the ground that the requested action was error.").  Under the invited-error

standard, a party generally waives any challenge to the invited error.  See United States v.

Cruz-Rodriguez, 570 F.3d 1179, 1183 (10th Cir. 2009); United States v. Zubia-Torres, 550 F.3d

1202, 1205 (10th Cir. 2008)("We typically find waiver in cases where a party has invited the error

that it now seeks to challenge . . . .").  Thus, under the circumstances, Yazzie waived any objection

to this condition of supervised release.

In any case, the record supports a finding that Yazzie is a danger to Tom, as he acted in a

reckless manner and almost set fire to the house.  United States v. Smith, 606 F.3d 1270, 1283 (10th

Cir. 2010).  Conditions of supervised release must normally: (i) be reasonably related to the nature

and circumstances of the offense and the history and characteristics of the defendant; (ii) involve

no greater deprivation of liberty than is reasonably necessary given the needs to afford adequate

deterrence to criminal conduct and to protect the public from further crimes of the defendant; and

(iii) comport with the relevant constitutional provisions.  See United States v. Mike, 632 F.3d 686,

692 (10th Cir. 2011); United States v. Hahn, 551 F.3d 977, 983 (2008).  This condition is narrowly

tailored to prevent Yazzie from contacting one person -- the victim of the offense.  It is not overly

-6-

broad or overly restrictive on his liberty.  See United States v. Wilcox, 324 F.App'x 805, 810 (11th Cir. 2009)(unpublished)(upholding a condition of supervised release preventing contact with the victim unless the probation officer gave him permission to do so); United States v. Molina, 985 F.2d 576, 1993 WL 20492, at *1 (9th Cir. 1993)(unpublished table decision)(upholding a condition of supervised release restricting the defendant's communication with the victim).  Furthermore, the substantive-due-process right to association with one's family members "has never been deemed absolute or unqualified," and "always must be balanced against the governmental interest involved." Starkey v. Boulder Cnty. Soc. Servs., 569 F.3d 1244, 1253 (10th Cir. 2009).  There is not an absolute prohibition on contact with Tom, as Tom may still contact Tom if he receives Tom's and the USPO's permission.  The Court believes the condition needs no further fine-tuning to make it a suitable condition.  See United States v. Edgin, 92 F.3d 1044, 1049-50 (10th Cir. 1996).  Given that the conduct in which Yazzie engaged could have possibly killed Tom, the Court believes this modified condition of supervised release balances Yazzie's interests, Tom's interests, and the United States' interests.

Additionally, the Court finds it proper to require the USPO to give its permission for Yazzie to contact Tom as long as the Court retains ultimate authority over that condition of supervised release.  "A court may delegate limited authority to a probation officer as long as the court retains and exercises ultimate authority over all of the supervised release conditions."  United States v. Wayne, 591 F.3d 1326, 1336 (10th Cir. 2010).  As a general matter, "probation officers have broad statutory authority to advise and supervise persons on supervised release to improve the releasees' conduct and lives, and to 'perform any other duty that the court may designate,'" including administering conditions "which require the prior approval of a probation officer."  United States v. Rodriguez, 558 F.3d 408, 414-15 (5th Cir. 2009)(quoting 18 U.S.C. §§ 3601, 3603(3), (10)).

Accord United States v. Mike, 632 F.3d at 695.  Should Yazzie ever desire to seek modification of this condition because he believes the USPO is wrongfully withholding permission, the Court retains the authority to modify this condition of supervised release under 18 U.S.C. § 3583(e)(2).  Under the relevant portions of 18 U.S.C. § 3583(e)(2), a court may:

> modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision . . . .

18 U.S.C. § 3583(e)(2).  As the United States Court of Appeals for the Eighth Circuit has explained:

> Implicit in these decisions [to delegate authority to a probation officer] is an assumption that where the district court does not disclaim ultimate responsibility . . . [and that] it is likely that the probation officer will consult with the court about the matter or, at a minimum, the court will entertain a motion from the defendant for reconsideration of the probation officer's initial decision.

United States v. Wynn, 553 F.3d 1114, 1120 (8th Cir. 2009).  Furthermore, the limited nature of this authority the Court has delegated to the USPO, the ability to disallow contact with one person -- Tom, the victim of the crime -- if Tom disagrees is a permissible delegation of the Court's authority to the USPO.  See United States v. Ceballos-Silva, No. 11-10275, 2011 WL 6217935, at *1 (5th Cir. Dec. 14, 2011)(unpublished)("The district court's delegation to the probation officer of its ability to implement and approve any exceptions to these restrictions [regarding contact with minors or the victims] did not constitute an abdication of its judicial authority."); United States v. Wayne, 591 F.3d 1336 ("Because the district court retained the ultimate authority to require Ms. Wayne to undergo mental health counseling, this condition was not an improper delegation of judicial power.").  Importantly, "Article III prohibits a judge from delegating the duty of imposing the defendant's punishment to the probation officer."  United States v. Mike, 632 F.3d at 695.  "In determining whether a particular delegation violates this restriction [imposed by Article III], courts

distinguish between those delegations that merely task the probation officer with performing ministerial acts or support services related to the punishment imposed and those that allow the officer to decide the nature or extent of the defendant's punishment." United States v. Mike, 632 F.3d at 695.[2]  The USPO's role is primarily, if not exclusively, ministerial.  If Tom consents to contact, the USPO should permit the contact.  If Tom does not, the USPO should prohibit it.  The USPO is primarily involved to make the ministerial decision whether Tom has truly consented to contact.  If the USPO does more than that ministerial role, and starts denying contact for other reasons, it is going beyond the Court's intentions regarding the imposition of this condition.  If that situation arises, Yazzie may request that the Court modify the condition, and it will be inclined to do so and eliminate the USPO's ministerial role.  While the condition affects Yazzie's liberty interests, the Court does not believe that the stipulated condition as imposed "constitute[s] a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing," particularly given the USPO's minimal ministerial role and the nature of Yazzie's crime against the victim, Tom.

---

[2]Problematic situations can also arise in this context when the district court delegates to the USPO the power to do something the district court was "required to do by statute," such as "determin[ing] the frequency of drug testing for a defendant on supervised release" or "fail[ing] to set post-imprisonment restitution payment schedules for defendants who could not immediately pay."  United States v. Boyd, 608 F.3d 331, 335 (7th Cir. 2010).  For example, 18 U.S.C. § 3583(d) provides:

> The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance.  The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)[(5), which addresses situations where the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse].

18 U.S.C. § 3583(d).

United States v. Mike, 632 F.3d at 696.  Furthermore, Yazzie has invited any error in this modified

condition by requesting it himself.  See United States v. Edward, 224 F.3d 1216, 1222 (10th Cir.

2000)("The invited error doctrine prevents a party from inducing action by a court and later seeking

reversal on the ground that the requested action was error.").

## II.     THE COURT WILL SENTENCE YAZZIE AT THE LOW END OF THE ADVISORY GUIDELINE RANGE.

The Court has carefully considered the parties' arguments and the circumstances of this case.

The Court has considered the guideline range for the applicable category of offense committed by

the applicable category of defendant.  The Court believes that the punishment that the guidelines set

forth at the low end of the advisory guideline range is appropriate for Yazzie's offense.  The Court

believes that a sentence of 27 months is sufficient to reflect the seriousness of this offense.  As the

Court discussed in its MOO, there are a variety of mitigating circumstances in this case and no

aggravating circumstances.  Yazzie acted in a reckless manner rather than an intentional manner

when he committed his offense.  There is no evidence that he intended to burn down Tom's house.

The following facts indicate that Yazzie did not specifically intend to destroy the residence: (i) the

amount of alcohol he consumed; (ii) his past history of alcohol abuse; (iii) the relatively small

amount of gasoline he used; (iv) the locations where he placed the gasoline; (v) that he poured most

of the gasoline in the yard away from the home; (vi) that he knew that the outside of the house was

made of concrete and would not likely burn down; and (vii) that he had a relatively good

relationship with Tom before the night of the fire.  It appears that Yazzie was trying to send Tom

a message rather than trying to kill him or to burn his house down.  Most importantly, he did not

harm anyone with his conduct, which might counsel in favor of a sentence higher within the

advisory guideline range.

The United States has argued that Yazzie was not truthful with authorities following his commission of the crime.  Many defendants, fearful for their freedom and the consequences of their crime, are at first unwilling to cooperate with law enforcement.  Since his arrest, Yazzie has acted in a manner indicating that he accepts responsibility for his conduct.  The Court does not believe his initial failure to cooperate with law enforcement is particularly unusual among defendants.  Additionally, the Court believes that Yazzie is sincere in his representations that he will face his alcohol problems.  Given Yazzie's military experience, he knows how to confront problems and deal with them.  He has acknowledged his problem.  The Court is more confident than with most defendants struggling with substance abuse that Yazzie may succeed, partially given the conditions that the Court will impose as part of his supervised release and given the support he will receive from the USPO.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  A 27-month sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  Because of the mitigating factors and lack of aggravating factors in the case, the Court believes this sentence reflects the seriousness of the offense.  This sentence is still a significant sentence and is within the advisory guideline range, so the Court believes the sentence promotes respect for the law and provides just punishment.  Given the reckless rather than intentional nature of Yazzie's conduct, it is not necessary to emphasize the factor of deterrence.  Because Yazzie did not harm anyone and plans to face his alcohol problems, the Court believes the 27-month sentence adequately protects the public.  Because the sentence is within the advisory guideline range, the

Court does not believe the sentence will create unwarranted sentencing disparities among similarly situated defendants.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Yazzie to 27-months imprisonment.

**IT IS ORDERED** that the request for a sentence at the bottom of the advisory guideline range in the Defendant's Sentencing Memorandum and Objection, filed October 21, 2011 (Doc. 48), is granted.  Additionally, the Court will sustain Defendant Derrick Jones Yazzie's objection to the term of supervised release regarding his contact with Herman Tom and will modify the proposed condition so that Yazzie will be allowed contact with Tom with the permission of Tom and the United States Probation Office.  The Court will sentence Yazzie to 27-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

-12-

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Shana B. Long
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*


John V. Butcher
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

      *Attorneys for the Defendant*